Good morning, Your Honors. My name is David Rude from the law firm of Clark and Rude in San Jose, and I have the privilege of representing before this court the QUATAM plaintiff, in this case, Dr. Patrick Campbell, who, of course, is here with us in the courtroom today. And I think the record before the court is very clear that the district judge in this case, when faced with this very preliminary matter, in a motion for dismissal for lack of subject matter jurisdiction under Rule 12b-1, was uncomfortable with proceeding with evidentiary hearings in the case and allowing the case to proceed to determine who did what when, without sending the case up here for clarification as to whether this court's ruling in the Lujan III case, written by Judge Silverman, foreclosed any inquiry into the facts of the case because of a rule that was so absolute that no matter what the surrounding circumstances were, there was no possible way that Dr. Campbell could prove that the court has subject matter jurisdiction and allow him to proceed because of the this court's interpretation of the application of the first-to-file rule in the Lujan decision. Now, let me ask you this. Before we get into the interpretation of Lujan, let me just try to orient myself where we are. There is a separate lawsuit going on before another judge with Capari and Carrapi and Zerga, right? Carrapi and Zerga. That's correct, Your Honor. Another case in front of another judge with another case number, separate action. Well, that's correct. What I don't understand is, and help me work this through, by what right does Dr. Campbell have to start his own case that says that a plaintiff in another case doesn't have standing? Where does he get the opportunity or the right to do that? Well, let's go back to the beginning, Your Honor. When Dr. Campbell filed his case, he had no knowledge of Carrapi and Zerga because they had only filed under seal three days earlier. So Dr. Campbell filed in the Eastern District, and his case was assigned to Judge Levy. Carrapi and Zerga filed, and their case was assigned to Judge Shub. Both cases were under seal. In the Eastern District. The same court, for our purposes. The same court, that's correct. Okay. And nobody had any way of knowing that Carrapi and Zerga had filed. Now, did Carrapi and Zerga file under subsection B of 3730? They filed under seal under that? They filed under seal. But did you file, did Dr. Campbell file under seal as well? Yes, he did. Okay. Yes, he did. Both cases were filed under seal and remained under seal until after the judge ruled on the dismissal motion. When we made motions in both cases, we intervened in the Carrapi case, made a motion to unseal it, which was granted. We made a motion to unseal the Campbell file, which was granted. All that occurred. Why did you file, and I don't mean to pry into, but why would one file under seal after public disclosure had taken place? Well, because the False Claims Act absolutely requires that you file under seal, whether there's been public disclosure or not, in order to trigger, in other words, just because the case is on the front page of the New York Times doesn't necessarily change the requirement that the cases be filed under seal. So what we have then is nobody, Carrapi and Zerga don't know we filed, we don't know they filed. We both file under seal. We both send our stuff to the Attorney General in Washington. And then we are then notified by the Justice Department that we are each notified that there is another pending case. And I was notified by the Justice Department in December when I took over representation of Dr. Campbell and another attorney, that there was another pending case that was filed. It was filed three days before our case was filed, and that the Justice Department was considering taking the position that the first-to-file bar would ultimately destroy subject matter jurisdiction in Dr. Campbell's case. However, we continued to work with the government in their investigation, because by then they had convened a grand jury. Dr. Campbell and I prepared an extensive disclosure statement, four inches thick. We worked with the U.S. Attorney's Office. We provided a wealth of information during the time period that took place after that. Then in May, we filed an extensive amended complaint that incorporated all of this information that Dr. Campbell had assembled before that he had given to the FBI and so forth. And once that was done, but before any answer, anybody had been served, before the cases were unsealed, and before there had been any discovery, the government filed a seven-page motion to dismiss this case based solely on five sheets of paper that Carothi and Zerga had filed. And so then their position was, is that the existence of those five sheets of paper in the court file in the same court, but pending before another judge, was fatal as a matter of law, no matter what the surrounding circumstances, under the first-to-file rule, which says that a pending quitam action bars all subsequent quitam actions. So I understand it's your contention that Judge Levy had it take as true your allegation that Carothi and Zerga did not have standing. Well, right. We, in other words, they tender this other complaint in opposition. That is what I'm talking about from a pleading standpoint. From a pleading standpoint on a Rule 12b-1 motion, all of our allegations have to be construed as true, and all evidence that we tender has to be construed in our favor, because the motion can't be granted. My impression is that that refers to factual allegations rather than legal conclusions. Yes. Okay. So you've made, you've alleged a legal conclusion that Carothi and Zerga do not have standing. They don't have to assume that's true. That's the issue. They have to assume that they don't have subject matter jurisdiction. What evidence, what evidence did you present to Judge Levy in support of that legal conclusion? The evidence that we submitted in support of that legal conclusion were the four or five complaints that Carothi and Zerga had already filed in state and federal court in which they allege what they did and from which it can be inferred what they didn't do. And we tendered all of the evidence in support of what Dr. Campbell did, and the FBI affidavit describing his extensive contribution to the government's effort was before the court. Isn't it possible that you could have two or more original sources? You can have two or more original sources, absolutely. What you're really telling us is that Campbell was a better original source. That's a very good point, Your Honor. That's exactly what we are not telling you. We are not telling you. That was the issue in Lujan III. Ms. Lujan said, I'm a better original source, or I am an original source, and therefore even though another original source filed first, I should have an – that would allow me to share in the relator share award. And, Your Honor, your opinion in Lujan III was right on the money. Congress said that as between eligible, multiple original source relators who file after full public disclosure, only the first one can receive the award. You are absolutely correct about that. And we are not saying that because of everything Dr. Campbell did, he has an equitable right to recover, and we're not trying to present the argument that you rejected in Lujan III. Instead, our contention is that a pending action is the language used by Congress. Congress created this first to file rule and said that a pending action is fatal to all subsequent actions. Now, the question before the court is, what is a pending action? And the question before the court is, did Congress reasonably intend there to be some minimum threshold that a pending action would have to satisfy before, as a matter of law, it would be fatal to all subsequent cases that were filed? Why isn't Carapi – why aren't Carapi and Zerga original sources? Your Honor, that is not an issue before this court because at the stage that we were at, Judge Levy assumed for the purpose of the motion that they could not qualify. And the order that's before this court says, assuming they cannot qualify and assuming that there is no subject matter jurisdiction in their case, their case is still a pending action that's fatal to Dr. Campbell. And the issue before this court is, is it necessary for a pending action to be an action filed by someone who can vest the court with subject matter jurisdiction and enable the court to go forward in order for that complaint to be fatal as a matter of law to a subsequently filed whistleblower? Now, our position is, is that – and this is a very important point because of the point that you made in Lujan 3, which is it's the pending action aspect of this that is critical between this case and Lujan 3. And there's a question of whether this case is enough different from Lujan 3 for Lujan 3 to not be controlling. Now, the reason that the pending action in Lujan 3 was fatal to Lujan's case, in other words, the Schumer case was fatal to the Lujan case, was because Schumer was a whistleblower. It was not a public disclosure case. He was – his – as you indicated in your opinion, Schumer's case informed the government of the fraud and vested the court with jurisdiction. And the Schumer case had so much jurisdiction and Schumer had so much standing that the case went all the way to the United States Supreme Court and came all the way back down and up and down. And Schumer was a viable whistleblower, and his complaint informed the government of the fraud and triggered the investigation. And the distinction here is that by the time Carapi and Zerga came along, the government had already been fully informed. The complaint was not the mechanism by which the government was informed of the fraud. And when Carapi and Zerga filed after full public disclosure, I mean, they did not contribute anything by filing the complaint And therefore, for the purpose of the complaint, all the real contribution to the government seems to have happened outside of the filing of the complaint. I understand that. And that – but the thing is, we have to assume for the – because there's never been a hearing. There's never been an evidentiary decision. The question is should Dr. Campbell – Counsel. Counsel. Go ahead. Are you asking that there be an evidentiary hearing in your case as to whether Carapi and Zerga are original sources? Well, Your Honor, that's a good point. I mean, one of the things that – yes. If this case is remanded, then we're going to be asking the court to consolidate the two cases so that we can prevent the government from playing one off against the other and have a hearing as to whether – Hansel, did you previously ask that the cases be consolidated? Yes, we asked that the cases be consolidated. Wasn't that rejected? Well, we haven't been able to get them consolidated yet, so we intervened in the Carapi action. But I think it's very important for this court to keep in mind that Dr. Campbell has been dismissed, not based on any finding that Carapi and Zerga – I think we understand that. Okay. I think you need to listen to our questions and answer them because – I am – all right. I'm happy to do that, Your Honor. Okay. Thanks. So, as I understand it, in the other case, it has now reached a settlement. Is that right? Well, first of all, Your Honor, for the purpose of the motion – I understand that. I want to know, as a practical matter, where proceedings stand. Okay. All right. The government – let me answer that question directly. The government asked the court to assume that Carapi and Zerga would be dismissed and would not receive an award. And that was the basis of the order and that was the status of the proceedings at the time, the dismissal and the judgment before this court was entered. Later, in order to prevent me from arguing before you that the government shouldn't be allowed to use a bogus case to knock out a good case and then knock out the bogus case and avoid paying anybody,  You're saying that the government originally – look, I don't understand this. I will question the government about this. But so you're saying that the government has allowed this other case to go forward, knowing that Carapi doesn't have jurisdiction because he's not an original source, because ultimately they were going to get that one dismissed for lack of jurisdiction and get you dismissed under the first-to-file rule. That's exactly what their announced intention was, and that's exactly what they proceeded to do. Where? Where was that intention announced? The intention was announced in that they told the district judge that they planned to file a motion to dismiss the Carapi case. The judge in the Carapi case, Judge Shub, kept extending the deadline for them to file the motion to dismiss. They made it clear in conversations with me and everything that they told the judge Lack of jurisdiction, counsel. That they were going to dismiss the Carapi-Zerga case for lack of jurisdiction and not pay them a fee. And you have that in a transcript on a record? Absolutely. Okay. Absolutely. There's no question that that was the government's strategy, was to use the temporary pendency of Carapi and Zerga to knock out Campbell and avoid paying either one of them. But what if it was? Suppose it was their strategy. The fact of the matter is the Carapi and Zerga case was seen to conclusion and resulted in a judgment signed by Judge Shub in favor of these guys for $8 million. No, that's not true, Your Honor. Now, let me tell you what happened. After this case was pending on appeal, the government did not settle. I mean, they settled the Carapi and the Campbell case with the federal government for $54 million. So these two cases, in terms of their end result, have been settled. The Carapi-Zerga case is still pending. This case is still pending. Judge Shub signed a judgment in favor of Carapi and Zerga? Oh, no. Absolutely not. I thought I saw someplace that he signed an $8.3 million judgment. Oh, absolutely not, Your Honor. The only thing that happened there was that after this case was pending on appeal, the government just announced that they were going to put $8 million on the table, but it was contingent on the outcome of this appeal, depending on who was later determined to be the qualified whistleblower. Carapi and Zerga don't have $8 million. Nobody says they're going to get $8 million unless you dismiss Dr. Campbell. So for the purpose of this appeal, you have to assume that Carapi and Zerga cannot qualify to receive the money, that they would have been dismissed, and that they would not have ever received the money, and that the government would have been able to use the first-to-file rule to avoid paying anybody a whistleblower fee, and that would be an absurd result. Judge Clifton just showed me this notice of relater share that Michael Hurst for the government bought. That's correct. Is that the last paper in the record on this? No, there isn't, Your Honor. In the supplemental record before the Court, we – numerous documents were filed in the Carapi-Zerga action, which made it clear that the government's willingness to pay – they never paid Carapi and Zerga. Their willingness to pay Carapi and Zerga was contingent on the outcome of this Well, okay. We're not going to use this first-to-file rule to knock them both out, so we'll put the $8 million on the table, depending on what the Ninth Circuit does on the Campbell appeal. And that's all in the supplemental record. It's all in the reply brief, and there isn't any dispute about that. So that for the – and really, I mean, that's an event that occurred after the judgment of dismissal was entered in this case. And so the judge Shubb didn't approve paying $8 million to Carapi and Zerga or anything else. That whole issue is up in the air pending the outcome of this appeal. And so for the purpose of the status of the record, at the time that the judgment in this case was entered, Judge Levy was operating on the assumption that Carapi and Zerga were going to be dismissed and that they were not going to get any money and that the government was going to be able to avoid paying either one. But really, the question here is, is – does Congress – I mean, must this Court infer that Congress required some minimum threshold for a pending action to be fatal to all subsequent actions? And I think the legislative history and the absurd result that would take place if just anybody could file a bogus action, because for – I assume that if they were just anybody, if they were just opportunistic plaintiffs, if they were just some bozo off the street, the government would have moved to dismiss them. The government has indicated to Judge Levy that they were planning to dismiss them on those grounds. I'm talking about the Judge Shubb, before whom the case is pending. If they thought these guys were just clowns trying to get a bunch of money from the government for no reason, can't we expect them to have brought a motion to dismiss? They told Judge Shubb they were going to bring a motion to dismiss? Telling them and doing it are two different things. Well, they settled – they said, okay, look, we will enter into an agreement with you that we'll pay you $8 million unless the Ninth Circuit reverses Dr. Campbell's case, in which case then we'll pay the $8 million to whoever is determined to be entitled to it. Didn't the government have an incentive to tell Judge Shubb these people are not entitled to any money if in fact they weren't? Well, absolutely, Your Honor. But our position is that this Court cannot take into consideration the government's later decision to put the $8 million on the table. I mean, that's not a relevant fact for the circumstances that existed at the time the judgment of dismissal was entered. I see you're out of time, Mr. Rood. Thank you very much. We'll now hear from the government. Well, Your Honor, I'd like to reserve a few minutes for rebuttal in view of the fact that you have to go. We'll give you a minute or so in rebuttal, but you used up your time. We'll give you a minute or so. Thank you. Good morning. Good morning. May it please the Court. I'm Irene Sollett from the Department of Justice. With me is Assistant United States Attorney Michael Hurst for the United States. This Court – this case presents a purely legal – a purely legal issue of whether the False Claims Act first-to-file rule is indeed exception-free, as the Court described it in Lujan, or whether, despite the plain language of the statute, it has to be given a different reading when no ketam case is filed until after a public disclosure of the facts of the alleged fraud. We say that the broad rule that the Court articulated in Lujan III is equally applicable on the facts of this case, which is where two ketam relators came forward after a public disclosure and where the second ketam relator contends that the first will eventually be dismissed for lack of subject matter jurisdiction. Supporting our reading of the statute are the language of B-5, which I'll talk to you about, the history of the amendments to the False Claims Act, and very important practical considerations about how the statute works both for the government – yes. I'm very troubled by the government's position that the first-to-file rule can be the first-to-file anything and not a viable action. Your Honor, let me address that. To respond to that. Yes. The first – there are very important reasons linked to the whole structure and purpose of the False Claims Act for why first needs to mean first, even after a public disclosure. Well, you're not responding to my question. I'm sorry. My question has to be first-to-file. First-to-file what? Anything. First-to-file shouldn't – I mean, wouldn't the concept of an action imply a viable action by a proper party that could be maintained? Let me address those points seriatim. First is a viable action. We do take the position, as you can see in our brief, that a complaint has to be adequate under Rule 9b in order to be – Yes, and that's interesting, because that contradicts directly your position that the first-to-file rule is exception free. Your Honor, I think I have an answer or several answers for you for that. 9b – Let me tell you why that particular argument by the government is particularly troublesome. 9b is simply a Federal rule of civil procedure. It can be met or not met in the court. It doesn't affect the court's jurisdiction, the court's power to act. Whereas, if you don't have an original source under this law, the court has no jurisdiction and it can't act. So that's a pretty powerful distinction, and you're saying you're elevating a Federal procedural rule over the court's very authority to act in a case. Your Honor, I don't think it really is a question of elevating a procedural rule over subject matter jurisdiction. 9b and b-5, or I should say e-4, which is the jurisdictional provision you're addressing, concern very different sorts of requirements. 9b is what's in the complaint, what's on the face of the complaint, does it tell you the what, where, why, when of the fraud. E-4 is not about how much or what facts are alleged in the complaint. It's about how the relator, the plaintiff, knew those facts, how he came by his knowledge, whether it was direct and independent knowledge. So one is what's on the face of the complaint. One is an evidentiary question about how the relator came by that knowledge. And I think if you look at subsection b-5, the first-to-file rule, you can see in the language of b-5 sort of the roots of this distinction that we make. If you look at b-5, it says, When a person brings an action under this subsection, no person other than the government may intervene or bring a related action based on the facts underlying the pending action. If a complaint is inadequate under Rule 9b, if it doesn't state facts that tell the defendant eventually, when it's no longer under seal, and the government initially, what this is about, then it doesn't even – it can't trigger 9b, which depends on – on a minimal statement of the facts underlying the pending action. Kennedy, let me ask you a – excuse me just a second. Go ahead. I look at the complaint here filed in the other action, and it is bare bones, not in a way that's surprising to me, because it makes reference to a disclosure statement filed separately, but I have difficulty understanding how 9b is an effective screen if this complaint is apparently deemed adequate to survive that screen. Well, Your Honor, that's a good question. There's nothing in the complaint. As a practical matter, what happens when a false claims act is filed under seal and the relator, as required by the statute under subsection b-2, makes a full – a written disclosure to the government of all the facts that he knows about the alleged fraud. The government makes a determination of, is there something here we want to investigate, and if so, it moves ahead and it does that. That's – that process is very important to alert the government that there's something there that it needs to look into. So the government's action – Well, but in a public disclosure case, it really doesn't work that way, because by the time either of these complaints are filed, the government has taken affirmative action. It's served the – obtained the search warrant, served it, gathered the evidence. So the complaint – ordinarily, that's the case. The government gets alerted by the complaint. But in this kind of context, the complaint's not telling the government anything that it didn't already know. Your Honor, I would agree with you about the – in the facts of this particular case. That is true. Clearly, it's the government itself that made the disclosure after the search warrant had been executed. But I think the Court has to be very aware that while some public disclosure cases may follow this model, many do not. The Court – the Court knows that public – what constitutes a public disclosure is often the subject of lengthy litigation itself. It was in the Schumer – in the Schumer case starting out, Schumer-Lujan, and it has been in many other cases. Many things that this Court and other courts of appeals have determined to be public disclosures are not events that, by any realistic calculation, would be thought to bring something to the attention of the government. For instance, in the A-1 ambulance case that we cite in our brief, it was decided by this Court. The Court determined that it was a public disclosure within the meaning of subsection E-4 to have public hearings in Monterey County about the public bidding of a contract for emergency medical ambulance services. And the question there was whether that was a public disclosure of the basic allegations of the fraud, and the Court said it was. I don't believe there's any real reason to expect that that kind of local hearing would put the government on notice. I think you're getting really off track. You're getting now into what is and what is not a public disclosure, and I assume that goes to your pragmatic argument. Yes, Your Honor. Really what we're focusing on right now is that you agree that Rule 9 is an exception. This complaint seems to be something that could have been subject to a Rule 9 motion to dismiss, and you apparently indicated in this case that it was also subject to a motion to dismiss because the two other plans were not an original source. Yet the government never acted on that. Your Honor, let me address that. The government initially had doubts about the status of Carabbi and Zerga as original sources. It eventually abandoned those doubts. It reached the conclusion in the Carabbi and Zerga case that it could not successfully challenge their original source status. The government never made any formal filings in this case or in the Carabbi-Zerga case stating that Carabbi and Zerga were not original sources. Let me ask you this. Suppose go ahead, finish your sentence. And I also would say as a – it's my understanding as a general matter in the way these False Claims Act cases develop, it's very unusual for the government to file a motion to dismiss on 9b grounds in a case where a relator has come to it with a complaint under seal and a public disclosure that reveals information to the government that it thinks is worth pursuing. It knows that a complaint that's inadequate under 9b can easily be amended. Indeed, it often tells relators that they ought to go ahead and amend their complaint. If the relator comes to the government with good information and information worth pursuing, I think it may have happened in rare instances, but typically the government does not move to dismiss those complaints under 9b. They – usually it's the defendant when the complaint is eventually unsealed that may make that motion. And that will be fatal to the relator if someone else has come in in the meantime. But if they haven't, the relator can amend their complaint. Let me ask you this. Suppose hypothetically somebody who just reads about it in the newspaper files a complaint, doesn't know anything about it other than what you've read in the paper, not an original source. Right. Government would have the right to get that dismissed, right? Correct. Would that count? Would that bar any subsequent complaints under your – under your reading? Your Honor, and that is in fact what this case is about. And not only does the language of B-5 support that result, because it doesn't contain any exceptions, it doesn't contain any cross-references to subsection E-4, it doesn't indicate that what is a pending action changes chronologically from before a public disclosure to after a public disclosure. But were it the case that a complaint that was inadequate under E-4 for not being an original source could allow the next in line to then jump into that spot, what you would do is essentially you would turn the Federal court into a kind of reward tribunal for potential relators. Each relator could come in hoping to knock out the preceding relator ultimately on the ground that all the preceding ones weren't original sources. Well, I mean, I would expect the government would come forward in the first case and say, you know, these people just turned on Rush Limbaugh and heard about it, and so they file a complaint. They don't know anything else about it other than what they heard on the radio. The government does frequently. Okay. So why should – why should that disqualify a real original source who files first from collecting the reward that Congress intends? Your Honor, I think that the fairly simple and without exception language in B-5 shows that Congress understood the importance of providing a clear signal to relators that they needed to act promptly on their information, and they were at risk of losing their entitlement to a share of the ultimate recovery if they did not, and that that is an important incentive to provide without regard to the public disclosure bar in subsection E-4. First of all, it's not frequently – it's frequently not clear whether there's been a public disclosure or not, even though it was very clear in this case. And even where the Court would ultimately determine that there had been a public disclosure, that disclosure may not have been sufficient to put the government on notice of the facts of the fraud that it needed to investigate. And for all of these reasons, it makes sense, it made sense for Congress to establish a bright-line rule that said first means first. You come in – as soon as you have enough information to satisfy 9b, you come forward. Now, I would add on 9b one other point, and that is that this was not a question before Judge Levy in this case. When Dr. Campbell was before Judge Levy, he made the argument that he was the first original source to file, and that's why he should prevail, not that the Kharabi and Zerga complaint was invalid under Rule 9b. Let me ask you this. I asked Mr. Root at the beginning, do you agree that Campbell, in his lawsuit, can raise whether Kharabi, in a separate lawsuit, has standing? No, Your Honor. I mean, what we're saying is that that issue – that that issue doesn't matter under B-5. But not for jurisprudential reasons. You're saying it doesn't matter because you go strictly based on who was the first to file. Yes, Your Honor. And I – and just so the record is clear. I share the same question as Judge Silverman. It's a jurisprudential concern. Right. It's another jurisdictional concern. Well, in fact, one of the things that we argued in our brief is that as a matter of judicial administration, the very point that you raise, which is can somebody come into one case and make the claim that a plaintiff in another case lacks standing when his lawyer isn't there to say, yes, he does, in order for that to be resolved, if that's the – if that's the – if that issue needed to be resolved, the only way to have that issue resolved would be for the cases to be consolidated. At the outset of this litigation, the government notified the judges in both cases of the existence of the other. And the other one was that there was a standard notice that there existed a related case, not that either party made a motion to consolidate the two cases. That's correct, Your Honor, although I think it's the case that's been consolidated. All the judges did was just decline to low number the case, which is an internal judicial procedure. It's not. If the government really felt this case ought to be consolidated, it could have made a motion. Well, Your Honor, the government didn't believe the case absolutely needed to be consolidated, because under our view of the law, the issue of the standing of Carapi and Zerga did not have to be resolved in this case. However, whether or not he used the correct procedural mechanism, I think it was quite clear that Dr. Campbell's counsel did urge that they be consolidated, and the courts declined to do that. But I think in cases where, as often happens, not here, but where relators file complaints about the same fraud in different districts where you're talking about a nationwide kind of fraud, the difficulties of consolidation are often greater. It often happens, but that's what would be necessary in order to resolve the issue that you're asking about. But it doesn't have to be resolved because Judge Levy assumed for purposes of this result that Carapi and Zerga are not original sources. That's correct. So that's not even an issue in front of us right now. That's correct. That's correct. You don't have to decide that. He didn't decide that. The question is whether, even assuming, as Mr. Ruth said, even assuming that Carapi and Zerga are not good original sources, this Court should decide that Dr. Campbell cannot not go forward in his action because he was not first. And as I said, it's not only the ---- Okay. Suppose we disagree with you on that point. What happens? What happens next? We send it back to Judge Levy, and if so, for what? I think you would send it back to Judge Levy, and at that point, it probably would make sense for the Court to direct the district court to consolidate the two cases for the determination that would then be required. And have a hearing on ---- And it would require a hearing, and it would ---- Whether Carapi and Zerga were original sources. That's right. And if it's determined that they are, then that's the ballgame for Dr. Campbell. And I think Dr. Campbell agrees with that. But I would point out that the kind of inquiry that would occur on remand, it is, as you said, it would be an evidentiary type of inquiry. And although Dr. Campbell has argued that, you know, that's not a big deal, because after all, district courts are required to sort out lots of messiness among multiple relators already, pointing to the health care fraud cases, I would urge the Court that that kind of inquiry is ---- this is not only an additional inquiry, it's a qualitatively more burdensome inquiry. And there's no indication in the statutory text or anything in the history of the statute that that's what Congress intended. If Congress had really meant the courts to take on that burden, I think there would be some indication in the statute. And I think that ---- I guess the last thought I would leave you with is that the importance of the first-to-file rule as an incentive to relators to come forward quickly to bring their information to the government so that an investigation can begin, and which may be necessary even in many public disclosure cases where there's been something that technically under the statute is a public disclosure. And it's less of an incentive in a public disclosure case, this incentive to bring the information quickly to the government to ---- so that it can start its investigation, because some information is already out there in a public disclosure case. Some information is out there in the world. It is not necessarily clear, however, as a practical matter, Your Honor, that ---- Yes, I understand that. Okay. Just because the information is out there to the government, people working for the government may not understand that. But it is less. It is less of an interest in a public disclosure case. Certainly in some public disclosure cases. But I think when you're looking at what B-5 means, it of course runs across the whole range of cases. And we think that the incentive is still important. Let me ask you something about this case. In this case, as I understand, and the facts that we have before us may not ---- we have taken as true, okay, as alleged. The government seemed to have worked with Dr. Campbell in getting information to prepare the massive search warrants and raids that were done. And they ---- so some government agents were working with Dr. Campbell in advance of the public disclosure, which was the raid, the execution of the search warrants. And so they had knowledge that ---- of Dr. Campbell's involvement, some government people at some level. Yes. Later on, later on, the Karpovich-Serga thing pops up. Isn't this a classic thing where it's well within the government's knowledge who is the original source? Your Honor, I think the sequence of events was Karpovich-Serga came to the government, then Dr. Campbell came to the government. The government worked with both Karpovich-Serga and Dr. Campbell. Okay. But as I understand it, Karpovich-Serga had direct and independent knowledge of their own Medicare, their own fraud, and it wasn't even Medicare. It was private insurance. Karpovich had had a medically unnecessary cardiac procedure. It was his own experience. He didn't have the knowledge of the extensive fraud on Medicare, which is obviously what triggered the government's interest, as opposed to the fraud on a private insurance company. So that ---- so the nature of their knowledge was different, and the government knew that. Your Honor, saying first that we're assuming those facts ---- Okay. But that's who we have to assume. And as a member of the Court earlier pointed out, there can be multiple original sources in a False Claims Act case. The government has reached the conclusion in this case that it would not be able, for a variety of reasons, you know, based on the disclosure that Karpovich-Serga made to the government, to successfully challenge them on original source grounds. The government concluded, although that's not relevant to your determination in this case, that it could not succeed in knocking them out as nonoriginal sources, and it's on that basis ---- I don't know if he didn't try. I mean, we don't know that. Well, Your Honor, the government makes these kinds of litigation decisions in False Claims Act cases all the time. It does not ---- No court judges like myself who've handled these cases rule on those kinds of questions all the time. Anyway, your time's up. Thank you very much. Thank you. Mr. Ruehl, we'll give you two minutes. First thing I want to point out is that one of the main cases that the government relies on in support of their argument, that it's a race to the courthouse and it doesn't make any difference who gets there first or what they knew or whether the court has jurisdiction. It can be just anybody, a bogus case, but if they're first, they knock out the second to file. They rely on this ---- the words race to the courthouse comes from U.S. X.R.L. LaCourte v. Smith-Kline at 149 Fed 3rd 227. And the race to the courthouse language is on page 234. And what the government doesn't include in their quote from the case is that what the court really says is Section 3730B-5, the first to file rule, creates a race to the courthouse. That's the language they quote. The rest of the sentence is among eligible relators. So that even the case they rely on recognizes that the race to the courthouse is not a race to the courthouse between just anybody who reads about it in the paper or whatever. It's a race to the courthouse only among eligible relators. And so I think that also supports our argument. And I think it's very important, the concession they make, that Rule 9b is an implied exception to or is a minimum threshold for a case to be a pending action. Because in this case, the complaint doesn't satisfy Rule 9b. So bring a motion to dismiss, the court gives them leave to amend. But in order to amend, they have to show that they have personal knowledge of the facts necessary to satisfy the rule. And if they don't, they're dismissed. And then the court doesn't have any jurisdiction to go forward. There's no real difference between that and dismissing them because they don't have enough personal knowledge to qualify as an original source. If you win today, you get what? A hearing in front of Judge Levy over whether Capari and Zerga were original sources? That's right. And if they win that, they get the money. Otherwise, they don't count and Dr. Campbell gets the money. And... And is it necessary for us to consolidate the cases to... It's absolutely necessary, Your Honor, because this problem of having proceedings going back and forth between both judges, I mean, we have a right to litigate the question of whether Capari and Zerga are original sources. And so, you know, and consolidation is essential. And I think that the government just conceded that. Let me be clear on this because my understanding from the briefs is that it's not quite as simple as that. You sought to intervene in the settlement with the underlying defendants and object to that. And I think you have argued that you preserved that right. So it's not simply a matter of going back and deciding, okay, there's a settlement with the defendants. Who gets the share of the bounty? You are still seeking to object to the underlying settlement. Is that correct? Okay. Let me clarify that, Your Honor. The government conceded on a separate motion after the judgment was entered in here. We objected because, don't forget, that the government used the fact that they had gotten Dr. Campbell dismissed to sidestep the requirement of the False Claims Act that they obtain the informed consent of the relator. And if they can't get it, that there be a judicial review of the settlement. So as it stands, they didn't get informed consent of the relator. They didn't get judicial review of the settlement. But they conceded when I objected to the settlement that if you reinstate Dr. Campbell and he and Zerga, then he can object to the $54 million settlement. But the government has already decided to pay 15% of that $54 million to whoever wins the contest between Carrapi and Zerga. So whether we object to the settlement or not has nothing to do with who gets the money. There isn't $54 million if that settlement is successfully objected to. I take it that's being in the balance as well. Well, right. If our objections to the settlement stand, I mean, it's hard to predict what's going to happen after that. I just want to understand what's left open. Are you now telling me that you will no longer object to the settlement so we can take that safely in place and it's solely a matter of dividing up the bounty? Or are you telling me that, yes, you're going to preserve your right to object to the settlement? Well, we don't want to give it up now, but we haven't really thought it through as to what we're actually going to do after we get all the way down there. I mean... For now, you're leaving open the possibility of maintaining your objection to the underlying settlement. Well, we're leaving it open. But, I mean, with the money that's already on the table and the likelihood that that's going to go very far probably isn't very great. But, I mean, at least Dr. Campbell gets to go back and reinstate his position and to compete with Carrapi and Zerga for the money that's already on the table, I think. Thank you very much, Mr. Rueh. Thank you. Thank you as well. The case will start you to see.
judges: Thomas, Silverman, Clifton